SYDNEY A. MENEES (D.C. Bar No. 1027544)
sydney.menees@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M St. NE
Washington, DC 20002
Telephone (202) 514-2398
Facsimile (202) 514-8865

*Attorney for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE, *et al*.,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>ANDREW R. WHEELER, in his official capacity as the Administrator of the United States Environmental Protection Agency,<br><br>　　　　　　　Defendant. | Case No. 3:19-cv-02004-VC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE**<br><br>Date: Thursday December 12, 2019<br>Time: 10:00 am<br>Courtroom: 4, 17th Floor |

## NOTICE OF MOTION

Please take notice that on December 12, 2019 or as soon thereafter as counsel can be heard, Andrew Wheeler in his official capacity as Administrator to the United States Environmental Protection Agency (hereinafter "EPA") will move this Court, located in Courtroom 4, 17th Floor of 450 Golden Gate Avenue, San Francisco to transfer this motion to the District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a).

## RELIEF REQUESTED

EPA requests that this Court enter an order transferring this case to the District Court for the District of Columbia.

Table of Contents

I. INTRODUCTION ..................................................................................................1
II. BACKGROUND ....................................................................................................2
   a. Statutory and Regulatory Background............................................................2
   b. Factual Background for Coke Ovens..............................................................3
   c. Standard of Review.........................................................................................5
III. ARGUMENT..........................................................................................................5
   a. This Court Has Discretion to Transfer Venue ................................................6
   b. Venue Is Proper in the District of Columbia ..................................................6
   c. The Ninth Circuit's Factors Favor Transferring
      This Case to D.C. ............................................................................................6
      1. Forum's Interest in Subject Matter .............................................................7
      2. Respective Parties' Contacts with the Forum .............................................8
      3. Contacts Relating to Cause of Action.........................................................9
      4. Plaintiff's Choice of Forum ........................................................................9
      5. Litigation Cost ..........................................................................................10
      6. Court Congestion .....................................................................................10
      7. Access to Sources of Proof.......................................................................10
IV. CONCLUSION.....................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Alec L. v. Jackson*,
  Case No. C-11-2203 EMC, 2011 WL 8583134 (N.D. Cal. Dec. 6, 2011) .......................... 7, 9

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
  No. CV 12-4407-SC, 2013 WL 120185 (N.D. Cal. Jan. 8, 2013) ...................................... 6, 8

*Atl. Marine Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013) .......................................................................................................... 5, 7

*Cement Kiln Recycling Coal. v. EPA*,
  255 F.3d 855 (D.C. Cir. 2001) ............................................................................................ 2

*Chesapeake Climate Action Network v. Export-Import Bank of the U.S.*, Case No. C,
  13-03532 WHA, 2013 WL 6057824 (N.D. Cal., Nov. 15, 2013).......................................... 7

*Ctr. for Biological Diversity v. McCarthy*,
  Case No. 14-cv-05138-WHO, 2015 WL 1535594 (N.D. Cal. April 6, 2015) ................... 5, 7

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) ............................................................................................... 9

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) .......................................................................................... 5, 6

*Knapp v. Wachovia Corp.*,
  No. 7-4551, 2008 WL 2037611 (N.D. Cal. 2008) ............................................................... 8

*Pac. Car & Foundry Co. v. Pence*,
  403 F.2d 949 (9th Cir. 1968) ............................................................................................... 9

*Rumley v. Regents of Univ. of Cal., et al.*,
  Case No. 19-cv-04097-PHJ, 2019 WL 4847805 (N.D. Cal. Oct. 1, 2019) .......................... 7

*Secs. Investor Protection Corp. v. Vigman*,
  764 F.2d 1309 (9th Cir. 1985) ............................................................................................. 9

*Stewart Org., Inc. v. Ricoh*,
  487 U.S. 22 (1988)............................................................................................................... 6

*Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ............................................................................................. 1

*Tate v. Brinderson Constructors, Inc.*,
  Case No. 16-cv-04314-VC, 2016 WL 7387430 (N.D. Cal. Dec. 21, 2016) ........................... 6

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ............................................................................................................. 6

**Statutes**

28 U.S.C. § 1391(e)(1) ............................................................................................................. 6

28 U.S.C. § 1404(a) ...................................................................................................... 1, 5, 6, 10

42 U.S.C. § 7401(b)(1) ............................................................................................................. 2

42 U.S.C. § 7412(b)(1) ............................................................................................................. 2

42 U.S.C. § 7412(d) .............................................................................................................. 2, 3

42 U.S.C. § 7412(d)(6) ......................................................................................................... 3, 4

42 U.S.C. § 7412(f) ................................................................................................................... 3

42 U.S.C. § 7607(d) .................................................................................................................. 3

**Regulations**

40 C.F.R. § 1.41 ........................................................................................................................ 8

**Other Authorities**

49 Fed. Reg. 36,560 .................................................................................................................. 3

58 Fed. Reg. 57,898 .................................................................................................................. 4

68 Fed. Reg. 18,008 .................................................................................................................. 4

69 Fed. Reg. 60,813 .................................................................................................................. 4

70 Fed. Reg. 19,992 .............................................................................................................. 1, 4

70 Fed. Reg. 44,285 .................................................................................................................. 4

*Federal Civil Procedure Before Trial* § 4:763 (2007) ............................................................. 9

## I.     INTRODUCTION

Plaintiffs Citizens for Pennsylvania's Future, Gasp, Louisiana Bucket Brigade, and Sierra Club seek to compel the Administrator of the Environmental Protection Agency ("EPA") to perform risk and technology reviews of the national emission standards for hazardous air pollutants ("NESHAPs") for coke ovens and coke oven batteries[1] under the Clean Air Act ("CAA") sections 112(d)(6) and 112(f)(2).  EPA does not dispute that is has not yet performed the required risk and technology reviews for coke ovens (subpart CCCCC) under CAA sections 112(d)(6) and 112(f)(2) or the technology review for coke oven batteries (subpart L) under CAA section 112(d)(6).  However, EPA does dispute Plaintiffs' assertion that EPA is required to perform a risk review for coke oven batteries (Subpart L) under CAA section 112(f)(2) as EPA completed that risk review in 2005.[2]  EPA anticipates that the parties may not agree on the appropriate remedy for the uncontested claims.

EPA moves to transfer this case from the Northern District of California to the District Court for the District of Columbia ("D.C.") because this matter is much more closely connected to D.C. than this district and Plaintiffs will not be prejudiced by the requested transfer.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); *see Sun v. Advanced China Healthcare, Inc.,* 901 F.3d 1081, 1087 (9th Cir. 2018).  Here, Plaintiffs are seeking to compel EPA to take actions that are nationally applicable.  With regard to any such action, the EPA Administrator, who is based in D.C., would sign the final agency actions, and the administrative record for the actions would be developed and certified by EPA staff, many of whom are located at EPA headquarters in D.C.  EPA staff in D.C. will also assist in the defense of this CAA deadline suit.  EPA's

---

[1] The NESHAP for Coke Oven Batteries is codified at 40 C.F.R. Part 63, Subpart L.  The NESHAP for Coke Ovens: Pushing, Quenching and Battery Stacks is codified at 40 C.F.R. Part 63, Subpart CCCCC.

[2] National Emission Standards for Coke Oven Batteries; Final Rule, 70 Fed. Reg. 19,992 (Apr. 14, 2005).

1

counsel and Plaintiffs' lead counsel are all located in D.C. California's only connection to this case is that one of the four Plaintiffs – Sierra Club – is based in Oakland. However, Sierra Club is a nationwide organization with chapters across the country, including Washington, D.C. The other three Plaintiffs are geographically dispersed in Pennsylvania, Louisiana, and Alabama. As a result, California has no particular interest in this controversy beyond any of the other forums where the parties are located. Additional factors including court congestion, litigation cost, and access to sources of proof, tip the scale in favor of transferring this case to D.C.

Undersigned counsel for EPA conferred with counsel for Plaintiffs regarding the motion and hearing for the motion. Undersigned counsel understands that Plaintiffs will oppose the motion and hearing date, and will propose an alternative hearing date.

## II.     BACKGROUND

### A.  Statutory and Regulatory Background

The CAA establishes a comprehensive scheme to regulate air pollution with a stated purpose of "protect[ing] and enhance[ing] the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). As part of this scheme, EPA regulates hazardous air pollutants, or "HAPs" which are "pollutants which present, or may present . . . a threat of adverse human health effects . . . or adverse environmental effects whether through ambient concentrations, bioaccumulation, deposition, or otherwise…" *Id*. Prior to the 1990 Amendments, the CAA required EPA to regulate HAPs on the basis of risk. H.R. Rep. No. 101-490 at 150-51, 322, reprinted in 2 A Legislative History of the CAA Amendments of 1990 at 3174-75, 3346 (Comm. Print 1993) ("Legislative History"). Dissatisfied with the pace and difficulties inherent in setting risk-based regulations, Legislative History at 3346, Congress amended the CAA in 1990, establishing a two-stage approach--one technology-based and the other risk-based--for regulating HAP emissions. 42 U.S.C. §§ 7412(d) & (f); *see Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 857-58 (D.C. Cir. 2001). In addition, Congress specified a list of hazardous air pollutants for regulation under section 7412(b) of the CAA and authorized EPA to revise that list. 42 U.S.C. § 7412(b)(1) & (2).

For the first step of regulating HAPs pursuant to CAA section 112, Congress directed EPA to promulgate technology-based emission standards for categories of sources that emit the listed HAPs.  42 U.S.C. § 7412(d).  These source category emission standards are codified in 40 C.F.R. Part 63.

The second step of regulating HAPs pursuant to CAA section 112 involves reviewing the standards EPA initially promulgated for the category pursuant to CAA section 112(d). There are two reviews: a technology review pursuant to CAA section 112(d)(6) and a residual risk review pursuant to CAA section 112(f)(2).  The technology review requires EPA to review developments in "practices, processes, and control technologies" for each source category and to revise the standards, as necessary.  42 U.S.C. § 7412(d)(6).  Congress specifically required that this technology review must be repeated every eight years.  *Id*.  The residual risk review requires EPA to determine whether residual risks remain that warrant more stringent standards to protect human health with an ample margin of safety or to prevent an "adverse environmental effect" and to promulgate such standards.  *Id.* § 7412(f)(2)(A). The residual risk review is to be undertaken "within 8 years after promulgation of standards for each category or subcategory of sources pursuant to subsection (d)."  *Id*.  EPA has typically preformed both the residual risk review and the first technology review for each source category in a single rulemaking.  *Id*.  EPA refers to these combined reviews as the "risk and technology review," or "RTR." The RTR process for each source category is a rulemaking that must comply with the procedural requirements of the CAA, 42 U.S.C. § 7607(d).

**B.  Factual Background**

Coke ovens convert coal into coke.  Coke is one of the basic materials used in blast furnaces for the conversion of iron ore to iron, one of the first steps in the iron and steelmaking process.  All the coke ovens in the United States are located on the eastern side of the country, concentrated primarily in the upper Midwest.  *See* Ex. A (Map of Coke Oven Facilities in the U.S.).

Before Congress passed the 1990 Clean Air Act Amendments, EPA listed coke oven emissions as a hazardous air pollutant pursuant to CAA section 112(b)(1)(A) on September 18, 1984.  *See* 49 Fed. Reg. 36,560.  However, EPA did not finalize standards before the CAA was amended.  EPA took the first step in regulating HAP emissions from coke ovens when it promulgated CAA 112(d) standards in 1993 for certain emission points, including doors, lids, offtakes and charging.  *See* 58 Fed. Reg. 57,898 (Oct. 27, 1993).  These initial coke oven standards were codified at 40 C.F.R. Part 63, Subpart L.  EPA completed a risk and technology review of subpart L in 2005.  *See* 70 Fed. Reg. 19,992 (April 15, 2005).  EPA concluded that residual risks from the subpart L emission standards constituted an "acceptable level of risk."  *Id*. at 19,994.  When EPA conducted the risk and technology reviews, EPA promulgated limited revisions to subpart L.  *Id*. at 20,013-20,015.  Since 2005, EPA concedes it has not conducted a subsequent technology review pursuant to CAA section 112(d)(6) for subpart L.

In 2003, EPA promulgated another set of CAA section 112(d) standards to regulate HAP from pushing, quenching and battery stacks at coke ovens.  *See* 68 Fed. Reg. 18,008 (April 14, 2003).  The standards regulating pushing, quenching and battery stacks are codified at 40 C.F.R. Part 63, Subpart CCCCC and regulate different emission points from the standards in subpart L.  EPA finalized amendments to subpart CCCCC in 2004 and 2005, but has not yet completed a risk or technology review for subpart CCCCC.  *See* 69 Fed. Reg. 60,813 (Oct. 13, 2004) and 70 Fed. Reg. 44,285 (Aug. 2, 2005).

On April 15, 2019, Plaintiffs Citizens for Pennsylvania's Future, Gasp, Louisiana Bucket Brigade, and Sierra Club filed this CAA citizen suit against Andrew Wheeler in his official capacity as Administrator of the EPA.  Doc. No. 1 (Compl.).  Plaintiffs allege that EPA has failed to undertake certain nondiscretionary duties relating to coke ovens and coke oven batteries under the CAA under CAA sections 112(d)(6) and 112(f)(2).  42 U.S.C. §§ 7412(d)(6), 7412(f)(2).

The Complaint alleges four claims.  Two of the claims are related to coke ovens and two of the claims are related to coke oven batteries (i.e., a concentrated group of coke ovens).

For coke ovens (subpart CCCCC), Plaintiffs allege EPA was obligated to perform an RTR by August 2, 2013. For coke oven batteries (subpart L), Plaintiffs allege that EPA was obligated to perform an RTR by April 15, 2013. EPA answered the Complaint on June 14, 2019. The Parties have been in settlement negotiations since then.

### C. Standard of Review

In order to determine whether venue transfer is proper, 28 U.S.C. § 1404(a) governs. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Ninth Circuit has adopted a multi-factor analysis to determine whether to transfer venue. Those factors include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Additional factors that Ninth Circuit courts have considered are the forum state's interest in the subject matter and the speed of adjudication. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013); *Ctr. for Biological Diversity v. McCarthy*, Case No. 14-cv-05138-WHO, 2015 WL 1535594 at *4-*5 (N.D. Cal. April 6, 2015).

### III. ARGUMENT

This court should transfer the venue of this matter to the District of Columbia because D.C. is more convenient for the parties than the Northern District of California and transfer will not impose any undue burden on or otherwise prejudice Plaintiffs. The factors that the Ninth Circuit weighs to evaluate convenience to the parties under 28 U.S.C. § 1404(a) favors such transfer as this matter is much more closely connected to the District of Columbia than the Northern District of California.

### a. This Court Has Discretion to Transfer Venue

Under 28 U.S.C. § 1404(a), a court can transfer an action to another district "where it might have been brought" "for the convenience of parties [and] in the interest of justice." A motion for transfer lies within the broad discretion of the district court and must be determined an individualized basis. *See Jones*, 211 F.3d at 498. The purpose of this provision is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." (Internal quotations omitted.) *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Whether venue should be transferred in any given case is dependent on a balancing of the individualized, fact-specific circumstances of that case. *See Stewart Org., Inc. v. Ricoh*, 487 U.S. 22, 29 (1988).

### b. Venue Is Proper in the District of Columbia

When the defendant is an employee of the United States acting in his or her official capacity, venue is proper in a forum if the defendant resides there or if a substantial part of the events or omissions giving rise to the claim occurred there. *See* 28 U.S.C. § 1391(e)(1); *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. CV 12-4407-SC, 2013 WL 120185, at *3 (N.D. Cal. Jan. 8, 2013). In this matter, venue is proper in the District of Columbia because Andrew Wheeler, the Administrator of EPA, resides there. Additionally, a substantial part of the alleged "acts or omissions" at issue occurred at EPA's headquarters in Washington, D.C. And the actions Plaintiffs seek to compel will predominantly be carried out at EPA headquarters.

### c. The Ninth Circuit's Factors Favor Transferring This Case to D.C.

Once venue is determined to be proper in both districts, the Ninth Circuit has adopted a multi-factor analysis to determine whether venue should be transferred under 28 U.S.C. § 1404(a). Factors to be considered include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel

attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *See Jones*, 211 F.3d at 498.  Some of these factors are more useful than others in light of technological advances and the unlikelihood that a case will resolve through trial.  *See Tate v. Brinderson Constructors, Inc.*, Case No. 16-cv-04314-VC, 2016 WL 7387430 at *1 (N.D. Cal. Dec. 21, 2016).  Additional factors that Ninth Circuit courts have considered are the forum state's interest in the subject matter and the speed of adjudication.  *See Atl. Marine Constr. Co.*, 571 U.S. at 63 (2013).  No one factor is dispositive.  *See Rumley v. Regents of Univ. of Cal., et al.*, Case No. 19-cv-04097-PHJ, 2019 WL 4847805, at *1 (N.D. Cal. Oct. 1, 2019).  The most relevant factors for the facts in this case to determine whether venue transfer to the District of Columbia are discussed in turn below:

### 1. Forum's Interest in the Subject Matter

A forum has an interest when the operative facts occurred in that forum.  *See Chesapeake Climate Action Network v. Export-Import Bank of the U.S.*, Case No. C 13-03532 WHA, 2013 WL 6057824 at *3 (N.D. Cal., Nov. 15, 2013).  The operative facts in this case – whether EPA has a mandatory duty and how long the agency should be provided to complete any required agency action – relate to agency actions that have occurred or will occur in District of Columbia.  D.C. has an interest in this case because the outcome of this case will affect administrative matters going forward and because EPA is headquartered in D.C.  As such, D.C. has a strong interest in the outcome of this case.

Courts also consider the location of the harm Plaintiffs allege when considering a forum's interest.  *See Alec L. v. Jackson*, Case No. C-11-2203 EMC, 2011 WL 8583134 at *5 (N.D. Cal. Dec. 6, 2011).  The harms that the Plaintiffs allege in this case relate to Plaintiffs living near coke ovens.  *See* Compl. at ¶ 41-42.  There are no coke ovens in California that would be affected by EPA's rulemakings.  In fact, there are no coke ovens west of Illinois.

7

*See* Ex. A (Map of Coke Oven Facilities in the U.S.).  Because there are no coke ovens in California, California does not have an interest related to the harm alleged.[3]

California has no particular local interest in this matter beyond the fact that one of the four Plaintiffs in this action – Sierra Club – has its place of business in California.  The other three Plaintiffs' principal places of business are in Pennsylvania, Louisiana, and Alabama.  Compl. at ¶ 6-8.  Notably, none of the operative facts in this matter occurred in California.  If a forum's only connection to a case is through one plaintiff, courts typically afford little weight to that forum's local interest.  *See, e.g., Knapp v. Wachovia Corp.*, No. 7-4551, 2008 WL 2037611, at *2 (N.D. Cal. 2008); *Animal Legal Def. Fund*, 2013 WL 120185, at *4.  As such, D.C.'s particular interest – operative facts occurring in the forum and EPA's headquarters in the forum – outweighs California's interest.

## 2. Respective Parties' Contacts with the Forum

Both parties have significant contacts with the District of Columbia.  Lead counsel for both Plaintiffs and Defendant are located in the District of Columbia.  Menees Decl. at ¶ 5.  Additionally, while Plaintiff Sierra Club is based in California, it is a nationwide organization with a chapter in D.C.  Menees Decl. at ¶ 4.  EPA is also headquartered in D.C.  The remaining Plaintiffs – based in Pennsylvania, Louisiana, and Alabama – are geographically closer to D.C. than the Northern District of California.

The parties have fewer contacts with the Northern District of California.  Only one of the five parties has its principal place of business in this district.  Even though EPA has a regional office in this district, none of the program staff that would work on the agency actions that Plaintiffs seek to compel are located in that regional office.

---

[3] While EPA could have moved to transfer this matter to one of the districts where coke ovens are located, EPA requests transfer to D.C. because D.C. has a greater connection to the case than any one of those forums and is geographically central to many coke oven facilities and three out of the four Plaintiffs.  *Cf. Center for Biological Diversity v. McCarthy*, Case No. 14-cv-05138-WHO, 2015 WL 1535594 at *5 (N.D. Cal. April 6, 2015).

8

### 3. Contacts Relating to Cause of Action

The agency actions that Plaintiffs are seeking to compel in this matter would all occur at EPA headquarters in D.C. As such, many of the program staff and decisionmakers related to this matter (including Administrator Andrew Wheeler and Acting Assistant Administrator for the Office of Air and Radiation[4] Anne Idsal) are located in D.C. None of the contacts relating to the cause of action are located in the Northern District of California.

### 4. Plaintiffs' Choice of Forum

While it is true that courts afford considerable weight to a plaintiff's choice of forum in determining a motion to transfer, *see Secs. Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir. 1985), a plaintiff's choice of forum is not dispositive, and must be balanced against the other factors of convenience. And where, as here, the facts giving rise to the action lack a significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum. *See* Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* § 4:763 (2007); *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."). Here, only one of the Plaintiffs is located in the Northern District of California. And that Plaintiff – Sierra Club – cannot claim that it will suffer any harm distinctive from the Plaintiffs located in other districts. *See Alec L.*, 2011 WL 8583134 at *3. Moreover, as stated above, there are no coke ovens in this district that could cause harm to Sierra Club members located in California. Because the operative facts occurred in the District of Columbia at EPA headquarters, not this district, and the other factors favor transfer, Plaintiffs' choice should receive minimal deference here.

---

[4] The Office of Air and Radiation will be the lead office for these rulemakings. The Assistant Administrator for Air and Radiation serves as the principal adviser to the Administrator in matters pertaining to air programs and is responsible for the management of those programs. *See* 40 C.F.R. § 1.41.

### 5. Litigation Costs

Both Plaintiffs and Defendant would incur unnecessary travel costs from litigating this case in the Northern District of California rather than D.C.  The lead attorneys for both parties are located in D.C.  Traveling to California for hearings would be an unnecessary drain on monetary resources – flights, accommodations, and per diem – as well as time.  If venue were transferred to D.C., neither party would have to incur travel expenses.

### 6. Court Congestion

The Court may also consider the relative court congestion in each forum by comparing the forums' median times from filing to disposition or trial.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  The median time from filing to disposing in civil cases during the 12 month period ending June 30, 2019 is 8.5 months in the Northern District of California compared to 5.6 months in the District of Columbia.  *See* U.S. District Courts - Median Time From Filing to Disposition of Civil Cases, by Action Taken - During the 12-Month Period Ending June 30, 2019, *available at* https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2019/06/30.  Accordingly, relative court congestion favors transferring this matter to D.C.

### 7. Access to Sources of Proof

Though this factor is less relevant due to technological advances and because the parties anticipate that this matter will be resolved through cross motions for summary judgment without discovery, litigating this matter in the District of Columbia provides easier access to sources of proof.  The alleged inactions took place in D.C.  Although EPA does not think discovery will be necessary in this case, if Plaintiffs were to move for discovery, many of the relevant EPA program staff would be based in D.C.  No documents or witnesses related to this case are located in the Northern District of California.

## IV.   CONCLUSION

For the foregoing reasons, this Court should transfer this matter to the District of Columbia pursuant to 28 U.S.C. § 1404(a).

10

Respectfully submitted,

Date: November 4, 2019

/s/ Sydney A. Menees
SYDNEY A. MENEES (D.C. Bar No. 1027544)
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M St. NW
Washington, DC 20002
sydney.menees@usdoj.gov
Telephone (202) 514-2398

*Attorney for Defendant*

Of counsel:

Emily Seidman
Office of General Counsel
U.S. Environmental Protection Agency

11