PAUL R. CORT, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
pcort@earthjustice.org
Tel: 415-217-2000
Fax: 415-217-2040

TOSH SAGAR, Admitted *Pro Hac Vice*
JAMES S. PEW, Admitted *Pro Hac Vice*
Earthjustice
1625 Massachusetts Ave, NW, Ste. 702
Washington, DC 20036
tsagar@earthjustice.org, jpew@earthjustice.org
Tel: 202-667-4500
Fax: 202-667-2356

*Counsel for Plaintiffs Citizens for Pennsylvania's Future,
Gasp, Louisiana Bucket Brigade, and Sierra Club*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE, *et al.*, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) Case No:  3:19-cv-02004 |
| v. | ) |
| | ) **PLAINTIFFS' OPPOSITION TO** |
| ANDREW WHEELER in his official capacity as Administrator of the United States Environmental Protection Agency, | ) **DEFENDANT'S MOTION TO** |
| | ) **TRANSFER** |
| | ) |
| *Defendant.* | ) |
| | ) |

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

   I.   CONGRESS ESTABLISHED FIRM DEADLINES FOR EPA TO TAKE ACTION TO
      PROTECT PLAINTIFFS FROM HAZARDOUS AIR POLLUTANTS LIKE COKE OVEN
      EMISSIONS ....................................................................................................................... 2

  II.   EPA FLOUTS THE ACT'S DEADLINES, THEREBY FORCING SIERRA CLUB AND
      OTHER CITIZENS TO SUE IN ORDER TO RECEIVE PROTECTIONS TO WHICH
      THEY ARE ENTITLED........................................................................................................ 3

 III.  EPA CONCEDES IT IS YEARS BEHIND SCHEDULE IN REGULATING HAZARDOUS
      COKE OVEN EMISSIONS ................................................................................................ 4

STANDARD OF REVIEW .......................................................................................................... 6

ARGUMENT ............................................................................................................................... 7

   I.   EPA MUST MAKE A "STRONG SHOWING" TO UPSET PLAINTIFFS' CHOICE TO
      LITIGATE IN SIERRA CLUB'S HOME DISTRICT ........................................................... 7

  II.   EPA CANNOT MEETS ITS BURDEN, AS TRANSFER TO THE D.D.C. WOULD NOT
      JUST SHIFT, BUT COMPOUND, INCONVENIENCE TO PLAINTIFFS ........................... 8

     A.  Transfer Would Unduly Delay Resolution Of This Case, Prejudicing Plaintiffs, Who
         Have Already Waited Years For EPA To Act ..................................................................... 9

     B.  The Remaining Private And Public Interest Factors Favor Plaintiffs Or Are Neutral ..... 11

         1.  The D.D.C. does not have a stronger interest in or connection with this matter ........ 11

         2.  There are no evidentiary issues that favor transfer to the D.D.C............................... 12

         3.  Litigation costs do not favor transfer ........................................................................ 13

         4.  Court congestion does not favor transfer to the D.D.C.............................................. 13

CONCLUSION.......................................................................................................................... 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                          **PAGE(S)**

*Alec L. v. Jackson*,
   2011 WL 8583134 (N.D. Cal. 2011) ...........................................................................11

*Animal Legal Def. Fund v. U.S. Dep't of Agriculture*,
   2013 WL 120185 (N.D. Cal. 2013) .............................................................................11

*Blue Ridge Envtl. Def. League v. Pruitt*,
   261 F. Supp. 3d 53 (D.D.C. 2017) ......................................................................3, 4, 12

*Cal. Communities Against Toxics v. Pruitt*,
   241 F. Supp. 3d 199 (D.D.C. 2017) .............................................................................3

*Chesapeake Climate Action v. Export-Import Bank*,
   2013 WL 6057824 (N.D. Cal. 2013) ..........................................................................11

*Cmty. In-Power & Dev. Ass'n, Inc. v. Pruitt*,
   304 F. Supp. 3d 212 (D.D.C. 2018) ..........................................................................3, 4

*Commodity Futures Trading Comm'n v. Savage*,
   611 F.2d 270 (9th Cir. 1979) ..................................................................................9, 10

*Ctr. for Biological Diversity v. Export-Import Bank of the United States*,
   No. C 12-6325, 2013 WL 5273088 (N.D. Cal. Sept. 17, 2013) ...................7, 8, 11, 13

*Ctr. for Biological Diversity v. McCarthy*,
   No. 14-cv-05138, 2015 WL 1535594 (N.D. Cal. Apr. 6, 2015)....................8, 9, 11, 13

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) .................................................................................6, 7, 9

*Desert Survivors v. US Dep't of the Interior*,
   No. 16-cv-01165, 2016 WL 3844332 (N.D. Cal. July 15, 2016) .........................7, 8, 12

*Knapp v. Wachovia Corp.*,
   No. C 07-4551, 2008 WL 2037611 (N.D. Cal. May 12, 2008) ...................................11

*Martin v. BNSF Ry. Co.*,
   Civ. Action No. 9:07-cv-154, 2007 WL 4333341 (E.D. Tex. Dec. 10, 2007)..............10

*Newsweek, Inc. v. U.S. Postal Serv.*,
   652 F.2d 239 (2d Cir. 1981)..........................................................................................8

*Sierra Club de Puerto Rico v. EPA*,
   815 F.3d 22 (D.C. Cir. 2016)......................................................................................12

*Sierra Club v. EPA*,
    551 F.3d 1019 (D.C. Cir. 2008) ................................................................3

*Sierra Club v. McCarthy*,
    No. 3:15-cv-01165, 2016 WL 1055120 (N.D. Cal. Mar. 15, 2016) .........................4, 12


**STATUTES**

28 U.S.C. § 1404(a) ...........................................................................6, 8

42 U.S.C. § 7412(d) ..........................................................................2, 4, 5

42 U.S.C. § 7412(d)(6) ............................................................................2

42 U.S.C. § 7412(f) .............................................................................4, 5

42 U.S.C. § 7412(f)(2)(A) .........................................................................2

42 U.S.C. § 7604(a) .............................................................................5, 7

42 U.S.C. § 7607(b) ..............................................................................7


**LEGISLATIVE HISTORY**

H.R. Rep. No. 101-490, 2 Legislative History of the Clean Air Act Amendments of
    1990 ..............................................................................................2

S. Rep. No. 101-228 (1989), *reprinted in* 1990 U.S.C.C.A.N. 3385 ....................2, 3


**FEDERAL REGISTER NOTICES**

68 Fed. Reg. 18,008 (Apr. 14, 2003) ............................................................4

69 Fed. Reg. 48,338 (Aug. 9, 2004) ............................................................5

70 Fed. Reg. 19,992 (Apr. 15, 2005) .........................................................4, 5

70 Fed. Reg. 44,285 (August 2, 2005) ..........................................................4

1

**TREATISES**

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.) ............................................6

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) ...........................................9

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

After years of waiting on EPA to complete its required review of coke ovens, Plaintiffs filed suit to compel EPA to fulfill its mandatory duties in order to protect their members. Utilizing the choice Congress afforded them, Plaintiffs sued in this District, where Sierra Club is headquartered. After months of indicating its assent to having this Court resolve this case, EPA now seeks transfer to the U.S. District Court for the District of Columbia ("D.D.C."). The Court should deny EPA's motion, as EPA cannot meet its burden to demonstrate that transfer is for the convenience of parties and witnesses, in the interest of justice.

In light of this Court's expeditious schedule for resolving this case, transfer on the eve of briefing is manifestly not in the interests of justice. EPA has ignored its mandatory duties to review emissions standards for coke ovens, just as it has for dozens of other sources of hazardous air pollutants. While EPA sat on its hands, Plaintiffs members continued to be exposed to toxic coke oven emissions, and hundreds of thousands of people living near coke ovens faced significant cancer risks. Delaying resolution of this case by transferring it to the D.D.C. will delay the promulgation of protections Plaintiffs sorely need. Moreover, this delay would be entirely of EPA's own making, as they waited months to seek transfer after giving every indication that they were willing to have this Court resolve this case.

All of the remaining factors weigh in Plaintiffs' favor or are neutral. This is Sierra Club's home district, whereas no Plaintiff is headquartered in DC. EPA makes much of the fact that there are no coke ovens in this District, ignoring that there are no coke ovens in Washington, DC. And the location of EPA's decision-makers and scientists is irrelevant, because there is little likelihood of trial. Thus, transfer would add to the parties' collective litigation burdens rather than eliminate them, which is insufficient to justify transfer under binding Circuit precedent.

**BACKGROUND**

I. **CONGRESS ESTABLISHED FIRM DEADLINES FOR EPA TO TAKE ACTION TO PROTECT PLAINTIFFS FROM HAZARDOUS AIR POLLUTANTS LIKE COKE OVEN EMISSIONS**

In the 1990 Clean Air Act Amendments, Congress created a new process for regulating emission of hazardous air pollutants, marked by fixed and mandatory deadlines. First, Congress directed EPA to promulgate technology-based emission standards for categories of sources that emit hazardous air pollutants. 42 U.S.C. § 7412(d). And Congress required EPA to review and, as necessary, update these technology-based standards not less often than every 8 years. 42 U.S.C. § 7412(d)(6).

Second, "after promulgat[ing]" a technology-based standard under 7412(d), EPA must conduct a residual risk review under 7412(f). *Id.* § 7412(f)(2)(A) This review requires EPA to determine whether, after promulgation of a technology-based standard, residual risks remain that warrant more stringent standards to protect human health and the environment. *Id.* If so, EPA must promulgate such standards. *Id.* In particular, if the residual "lifetime excess cancer risks to the individual most exposed" are not "less than <u>one in one million</u>, the Administrator shall promulgate standards." *Id.* (emphasis added).

As EPA admits, these provisions were enacted because Congress was "[d]issatisfied with the pace" of EPA's progress in regulating hazardous air pollutants. EPA Mot. at 2, Dkt. No. 24. Prior to the 1990 Amendments, EPA had established standards for "only a small fraction" of hazardous air pollutants. H.R. Rep. No. 101-490 at 151-54, 2 Legislative History of the Clean Air Act Amendments of 1990, at 3175-78; *see also* S. Rep. No. 101-228, at 127 (1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, at 3513 ("The law has worked poorly. In 18 years, EPA has regulated only some sources of only seven chemicals.").

Thus, the amended § 7412 was designed to "[e]liminat[e] much of EPA's discretion." *Sierra Club v. EPA*, 551 F.3d 1019, 1028 (D.C. Cir. 2008). And the firm deadlines were designed to "force[] regulatory action." S. Rep. 101-228, at 128, 156, 1990 U.S.C.C.A.N. at 3513, 3541.

## II.    EPA FLOUTS THE ACT'S DEADLINES, THEREBY FORCING SIERRA CLUB AND OTHER CITIZENS TO SUE IN ORDER TO RECEIVE PROTECTIONS TO WHICH THEY ARE ENTITLED

EPA routinely disregards the mandatory deadlines of § 7412, waiting for citizens suits to be filed before it even begins work. In several cases litigated in just the last few years, courts have held that EPA failed to meet the deadlines established in § 7412(d) & (f) for <u>over 40</u> source categories. *E.g.*, *Blue Ridge Envtl. Def. League v. Pruitt*, 261 F. Supp. 3d 53, 55 (D.D.C. 2017) (13 source categories); *Cmty. In-Power & Dev. Ass'n, Inc. v. Pruitt*, 304 F. Supp. 3d 212, 215 (D.D.C. 2018) (9 source categories); *Cal. Communities Against Toxics v. Pruitt*, 241 F. Supp. 3d 199, 202 (D.D.C. 2017) (20 source categories).

Each case follows the same pattern: EPA fails to comply with the statutory deadlines under § 7412(d) & (f); EPA waits until a citizen suit is filed; in response to the suit, EPA <u>admits</u> its failure to comply with the deadlines; but then EPA vigorously contests how much additional time the court should give the agency to remedy its failure. Indeed, after admitting liability, EPA may not even begin work during the pendency of the litigation, and may instead ask that the court allow EPA to delay starting its review for several years, despite the fact that EPA staff is working on discretionary activities in the meantime. *See, e.g.*, *Cmty. In-Power*, 304 F. Supp. 3d at 218 (noting EPA's argument that it could not even "begin" its review for several years); *id.* at 221 (finding that EPA staff were engaged in discretionary activities).

Sierra Club is one of the plaintiffs that has been forced to sue because EPA's persistent failure to comply with these deadlines leaves the Club's members without the protections to which

they are entitled. *E.g.*, *Sierra Club v. McCarthy*, No. 3:15-cv-01165, 2016 WL 1055120 (N.D. Cal. Mar. 15, 2016) ("*McCarthy (2016)*"); *Blue Ridge Envtl. Def. League*, 261 F. Supp. 3d 53; *Cmty. In-Power*, 304 F. Supp. 3d 212.

## III.   EPA CONCEDES IT IS YEARS BEHIND SCHEDULE IN REGULATING HAZARDOUS COKE OVEN EMISSIONS

EPA's disregard for the mandatory deadlines in § 7412 extends to this litigation: EPA concedes that it missed the deadlines to complete three actions that are the subject of this lawsuit. Answer ¶ 1, Dkt. No. 14. Those deadlines passed more than six years ago, yet EPA has taken no action, once again leaving members of the public at risk and necessitating this lawsuit.

In 2003 and 2005, EPA conducted rulemakings for the coke ovens source categories, which triggered the unfulfilled duties at issue here.[1] First, after EPA promulgated technology-based standards under 7412(d) for the Pushing Quenching, and Battery Stacks category, 68 Fed. Reg. 18,008 (Apr. 14, 2003), EPA promulgated amended standards in 2005. 70 Fed. Reg. 44,285 (Aug. 2, 2005). Having promulgated technology-based standards under § 7412(d), EPA was required to review those technology-based standards and to conduct a residual risk review within 8 years. 42 U.S.C. § 7412(d), (f). EPA concedes that it has not fulfilled either duty. Answer ¶¶ 1, 39; EPA Mot. at 4.

Second, EPA completed a risk and technology review for the Coke Oven Batteries Category, in which it: promulgated amended technology-based standards for this source category under § 7412(d), 70 Fed. Reg. 19,992, 20,008 (Apr. 15, 2005) (promulgating amended § 7412(d) standards); and promulgated risk-based standards for the category for the first time under § 7412(f).

---

[1] EPA has chosen to segment the various emission points in a coke oven facility into two categories—(1) Coke Oven Batteries and (2) Coke Ovens: Pushing, Quenching, and Battery Stacks—each of which are subject to the requirements of § 7412. *See* Complaint ¶¶ 36, 37 (citing relevant regulatory history), Dkt. No. 1; *see also* EPA Mot. at 4.

*Id.* at 19,992; *see also* EPA Mot. at 4. Having "promulgated" technology-based standards under § 7412(d), EPA was required to review those technology-based standards and to conduct a residual risk review within 8 years. 42 U.S.C. § 7412(d), (f). EPA concedes that it has not complied with its obligations to conduct the technology review, but disputes that it has any obligation to conduct a residual risk review for this category. Answer ¶ 1.

In the 2005 rulemaking for Coke Oven Batteries, EPA acknowledged that it had not fully assessed the risks posed by coke oven facilities, as a whole. 70 Fed. Reg. at 19,998 ("EPA does not yet have an accurate quantification of pushing and quenching battery emissions … such information is needed to reasonably assess risks, costs, and further technologically feasible emission reductions"). EPA recognized that hundreds of thousands of people exposed to coke oven emissions still faced at least a one-in-one-million cancer risk. *Id.* at 19,993-94. Indeed, EPA concluded that the maximum individual cancer risk would be 270-times that level. *Id.* at 19,994. And during the rulemaking, EPA recognized that it would have to review and, if required, address those facility-wide risks in the forthcoming review for the Pushing, Quenching, and Battery Stacks Category. 69 Fed. Reg. 48,338, 48,340-41 (Aug. 9, 2004) ("our determination of the ample margin of safety level for the total coke oven facility…will not be fully addressed until residual risk assessments for all coke plant source categories are completed").

More than 14 years have passed since EPA promised to complete this review, yet EPA has taken no further action. *See* Complaint ¶¶ 38-39; Answer ¶¶ 1, 38-39. And more than six years have passed since the 8-year timeframe for action expired. Accordingly, Plaintiffs brought suit under the citizen suit provisions of the Clean Air Act, which authorized them to bring this challenge in any one of the "district courts." 42 U.S.C. § 7604(a).

Since this suit was filed in April 2019, EPA has given every indication that it intended to litigate the case in this District. EPA filed its answer in June, raising no venue issues and making no mention of its intention to seek transfer to another district. *See* Answer. EPA then filed a case management statement jointly with Plaintiffs in July, indicating its willingness to resolve this case through summary judgment briefing in this Court. Joint Case Management Statement, Dkt. No. 19. In October, EPA filed a joint briefing schedule, again assenting to litigating this case in this Court, Joint Mot. to Continue, Dkt. No. 21, which the court adopted on October 4, Order, Dkt. No. 22.

Only in November, after it became clear that negotiations were unlikely to prove fruitful and Plaintiffs indicated their desire to proceed with summary judgment briefing, *see* Updated Joint Case Management Statement ¶¶ 11, 12, Dkt. No. 23, did EPA move to transfer this case, *see* EPA Mot.

## STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), the Court "may" transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice."

To meet this standard, "[t]he <u>defendant</u> must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (emphasis added). "As part of this inquiry, the court should consider private and public interest factors affecting the convenience of the forum." *Id.*[2]

The Court should not grant a motion to transfer where, "transfer would merely <u>shift</u> rather than eliminate the inconvenience." *Decker Coal*, 805 F.2d at 843 (emphasis added); Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.) ("transfer will not be ordered if the result would merely shift the inconvenience from one party to the other. In such circumstances, a transfer would

---

[2] The seven factors identified by Defendant largely track the *Decker Coal* factors, though they are not exhaustive. *Compare* EPA Mot. at 5, *with Decker Coal*, 805 F.2d at 843.

result in no systemic advantage, nor is there reason to believe that the interests of justice would be served.").

**ARGUMENT**

## I. EPA MUST MAKE A "STRONG SHOWING" TO UPSET PLAINTIFFS' CHOICE TO LITIGATE IN SIERRA CLUB'S HOME DISTRICT

EPA treats Plaintiffs' choice of forum as just one of many competing factors the Court should balance, EPA Mot. at 9, ignoring binding Circuit precedent that the burden of upsetting Plaintiffs' choice of forum is on the defendant. *Decker Coal*, 805 F.2d at 843. EPA cannot meet this burden where transfer would merely "shift" the inconvenience from EPA to Plaintiffs. *Id.*

EPA seeks to lighten its load, arguing that Plaintiffs' choice is entitled to "minimal deference" because this District lacks a "particular interest" in this case. EPA Mot. at 9. EPA's argument ignores that Sierra Club is headquartered in this District and incorporated in this state, Monahan Decl. ¶ 4, and "courts in this district have generally held that even a single plaintiff's residence here gives rise to a 'particular interest.'" *Desert Survivors v. US Dep't of the Interior*, No. 16-cv-01165, 2016 WL 3844332, at *9 (N.D. Cal. July 15, 2016) (rejecting identical argument based on residency of "one of the Plaintiffs"); *Ctr. for Biological Diversity v. Export-Import Bank of the United States*, No. C 12-6325, 2013 WL 5273088, at *8 (N.D. Cal. Sept. 17, 2013) (similar) ("*Export-Import Bank*"). Thus, contrary to EPA's claim, EPA Mot. at 9, the agency must make a "strong showing" to overcome Plaintiffs' choice to litigate in  Sierra Club's home forum. *Decker Coal*, 805 F.2d at 843.

Indeed, EPA's burden is especially great in this case, given Congress's deliberate decision to give plaintiffs their choice of fora when suing to enforce a nondiscretionary duty under the Clean Air Act. *See* 42 U.S.C. § 7604(a). Although the Clean Air Act restricts plaintiffs' choice of forum for some suits, it allows plaintiffs in nondiscretionary duty suits such as this one to sue in any one of the

1  "district courts," without geographical limitation. *Compare id.* (conferring jurisdiction over this

2  action on any district court), *with* 42 U.S.C. § 7607(b) (specifying that challenges to certain "locally

3

4  or regionally applicable" actions must be filed in the "appropriate circuit"); *see Newsweek, Inc. v.*

   *U.S. Postal Serv.*, 652 F.2d 239, 243 (2d Cir. 1981) ("The interest of justice favors retention of

5

6  jurisdiction in the forum chosen by an aggrieved party where … Congress has given him a choice.").

7          More importantly, regardless of whether Plaintiffs' choice is entitled to "substantial

8  deference" or only "minimal deference," Defendants still have the burden of showing that transfer

9  would "minimize overall inconvenience [not] simply shift the inconveniences of litigating in a non-

10 preferred forum between the parties." *Desert Survivors*, 2016 WL 3844332, at *7; *see Ctr. for*

11 *Biological Diversity v. McCarthy*, No. 14-cv-05138, 2015 WL 1535594, at *4, *6 (N.D. Cal. Apr. 6,

12

13 2015) ("*McCarthy (2015)*") (holding that plaintiffs' choice was entitled to "minimal deference," but

14 denying transfer because defendant could not carry its burden). Defendant's contrary arguments are

15 simply an attempt to shirk its burden.

16 **II.    EPA CANNOT MEETS ITS BURDEN, AS TRANSFER TO THE D.D.C. WOULD**
           **NOT JUST SHIFT, BUT COMPOUND, INCONVENIENCE TO PLAINTIFFS**
17

18         Here, granting transfer would only further delay EPA's completion of its overdue, mandatory

19 obligations to review standards for coke ovens, making the case for transfer even weaker than

20 similar cases where transfer has been denied, *e.g.*, *McCarthy (2015)*, 2015 WL 1535594; *Desert*

21 *Survivors*, 2016 WL 3844332; *Export-Import Bank*, 2013 WL 5273088. As Plaintiffs have waited

22 years for EPA to take action, further delay would prejudice plaintiffs and would not be "in the

23

24 interest of justice." 28 U.S.C. § 1404(a). And in all other material respects—the presence of a single

25 plaintiff in this district, the absence of the relevant decision-makers in this district, the absence of a

26 local environmental impact in this district, the lack of a need for evidence, potential allocation of

27 travel costs, and relative congestion of the courts—this case is indistinguishable from *McCarthy*

28

*(2015)*, where transfer from this District was denied. *McCarthy (2015)*, 2015 WL 1535594, at \*3-\*6.

Thus, transfer to the D.D.C. would simply impose new burdens on Plaintiffs, without alleviating any

significant inconvenience to the parties, and should be denied.

**A.  Transfer Would Unduly Delay Resolution Of This Case, Prejudicing Plaintiffs, Who Have Already Waited Years For EPA To Act**

Transfer is clearly not in the interests of justice as it would prejudice Plaintiffs by further

delaying EPA's completion of its long overdue duties to review emission standards for coke ovens

and that prejudice would result directly from EPA's delay in seeking transfer.

The potential for further delay is a reason to deny transfer. *E.g.*, *Commodity Futures Trading*

*Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (upholding district Court decision to deny

transfer motion based on delay that would result from transfer). "Courts quite naturally weigh the

possibility for delay and prejudice if a change of venue is granted." Wright & Miller, 15 Fed. Prac.

& Proc. Juris. § 3854 (4th ed.); *see Decker Coal*, 805 F.2d at 843 (court should consider "all other

practical problems that make trial of a case…expeditious").

Delay will result from transfer to the D.D.C. This Court has already established an

expeditious schedule for resolving this case, with Plaintiffs' motion for summary judgment due

December 16, 2019, and a hearing on the cross-motions for summary judgment to be held on

February 27, 2020. Minute Order of Nov. 12, 2019, Dkt. No. 25. If the case were transferred, the

new court would have to familiarize itself with the case, establish a new briefing schedule, and find

time in its docket to schedule a merits hearing. Discarding the progress that has been made in this

case and starting anew would almost certainly delay resolution of this case.

Such a delay in resolving this case would prejudice Plaintiffs, who have been waiting years

for EPA to undertake and complete the required reviews for the coke oven source categories. Even

setting aside the one contested claim, EPA concedes that it was required to take the three actions that

are the subject of the uncontested claims over six years ago, and that it has failed to comply with these legal obligations. And as EPA itself recognized, hundreds of thousands of people face risks from coke oven emissions that exceed the one-in-one-million trigger for imposing standards under § 7412(f)(2)(A). EPA will not impose standards to address those risks until these reviews are completed, and EPA will not complete these reviews without a court order setting a fixed deadline. Consequently, EPA cannot deny that these harms are ongoing and that delay in remedying them prejudices Plaintiffs.[3]

Transfer would be particularly inappropriate, now, because the resulting delay would be due entirely to EPA's own tardiness in seeking transfer. EPA repeatedly assented to having this case heard in this Court: filing an Answer in this Court; filing multiple case management statements indicating its willingness to resolve this case in this Court; and submitting a joint briefing schedule for this Court to resolve this case via summary judgment. *See supra* 7. EPA only moved to transfer after this Court entered a briefing schedule, just as briefing was set to begin. *Compare* Order, Dkt. No. 22 (setting initial briefing schedule on Oct. 4, 2019), *with* EPA Mot. (seeking transfer on November 5, 2019).

Moreover, given that EPA "had all the information it needed to file a motion to transfer when it filed its answer," yet waited for several months to seek transfer, the Court may properly conclude that EPA filed this motion "merely for tactical [reasons] and not for the convenience of any witness or party." *Martin v. BNSF Ry. Co.*, Civ. Action No. 9:07-cv-154, 2007 WL 4333341, at *4 (E.D. Tex. Dec. 10, 2007) (denying motion to transfer).

---

[3] Permitting further delay by transferring this case would be especially unjust in light of EPA's flagrant disregard for the firm, mandatory deadlines for completing reviews under § 7412. *See supra* 5.

Transfer would create significant delay and prejudice Plaintiffs, which is sufficient reason to deny the motion. *See Savage*, 611 F.2d at 279.

**B.      The Remaining Private And Public Interest Factors Favor Plaintiffs Or Are Neutral**

The remaining factors do not support transfer. As noted above, this case is materially indistinguishable from other environmental cases in which courts in this district have denied transfer: there is no particular interest in or contact with the D.D.C.; no evidentiary access issues that transfer to the D.D.C. would resolve; and no significant difference in litigation costs between districts. *See, e.g.*, *McCarthy (2015)*, 2015 WL 1535594; *Export-Import Bank*, 2013 WL 5273088.

And this case lacks the key factors that supported transfer in the environmental cases on which EPA relies. *See Alec L. v. Jackson*, 2011 WL 8583134, at *3 (N.D. Cal 2011) (citing need to call witnesses located in transferee district); *Chesapeake Climate Action v. Export-Import Bank*, 2013 WL 6057824, at *1-*2 (N.D. Cal. 2013) (granting transfer where most of the plaintiffs were headquartered in or near the transferee district); *Animal Legal Def. Fund v. U.S. Dep't of Agriculture*, 2013 WL 120185 (N.D. Cal. 2013) (in case involving single, captive whale, granting transfer to district in which aquarium was located to ease access to evidence in the event of a hearing on an injunction); *see also Knapp v. Wachovia Corp.*, No. C 07-4551, 2008 WL 2037611, at *2 (N.D. Cal. May 12, 2008) (similarly citing convenience of witnesses as favoring transfer in a non-environmental case).

*1.      The D.D.C. does not have a stronger interest in or connection with this matter*

Transfer is improper because EPA seeks to remove this from Sierra Club's home district to the D.D.C., a district where Plaintiffs have little contact and no coke ovens are located.

Sierra Club has members who live near and are harmed by emissions from coke ovens and, consequently, are injured by EPA's failure to update emission standards for coke ovens. Complaint

¶¶ 41-42; Monahan Decl. ¶ 9. Accordingly, Plaintiffs brought this suit in the home district of Sierra Club, and this District has an interest in remedying that harm. *McCarthy (2015)*, 2015 WL 1535594, at *5 (finding localized interest where "at least some of the plaintiffs are California residents"); *Desert Survivors*, 2016 WL 3844332, at *11 (plaintiffs' "presence in this District" creates local interest).

Moreover, Sierra Club has alleged that EPA's unlawful conduct denies the Club information to which it is legally entitled, and this denial of information injures the Club itself, independent of any injury to its members. Complaint ¶ 43. This Court has an interest in protecting Sierra Club, which is headquartered in this District, from that harm.

Contrary to EPA's claim, EPA Mot. at 7-9, the D.D.C.'s interest in and connection to this case is not stronger than this Court's. There are no coke ovens in or near Washington, DC. EPA Mot., Ex. A, Dkt. No. 24-1. And none of the Plaintiffs are residents of Washington, DC.[4] Given that EPA's lack of action will have no localized effects on Washington, DC, or any of its residents, the mere presence of EPA decision-makers in Washington, DC, EPA Mot. at 7-9, does not give the D.D.C. a significantly greater interest in this case.

2.      *There are no evidentiary issues that favor transfer to the D.D.C.*

EPA cursorily suggests that unspecified evidentiary issues may warrant transfer, but, as the parties have acknowledged, this case is all-but-certain to be resolved through cross-motions for summary judgment, EPA Mot. at 10; *also* Case Management Statement ¶¶ 8, 17, 18. Here, three of the four claims are not in dispute; the one contested issue of liability presents a purely legal question; and all the remedy issues can be resolved via summary judgment, without resort to any discovery or

---

[4] EPA points to Sierra Club's Washington, DC, chapter as evidence of a contact with that district, but this is not a case in which a local Club chapter is a litigant. *See, e.g.*, *Sierra Club de Puerto Rico v. EPA*, 815 F.3d 22 (D.C. Cir. 2016) (club chapter was a plaintiff).

live witness testimony. *Id.*; *see, e.g.*, *McCarthy (2016)*, 2016 WL 1055120 at \*3-\*7 (resolving remedy for violations of § 7412's deadlines via summary judgment); *Blue Ridge Envtl. Def. League*, 261 F. Supp. 3d at 55 (same). In such cases, evidence pertaining to remedy was limited to declarations by EPA staff electronically submitted to the court, with no discovery and no in-court witness testimony. *See, e.g.*, Sagar Decl., Ex. 1 (describing and attaching representative example of EPA's evidentiary submissions from *McCarthy (2016)*); *see also* Menees Decl. ¶ 3, Dkt. No. 24-2.

Thus, this factor does not support transfer. *McCarthy (2015)*, 2015 WL 1535594, at \*4 (noting that "environmental cases are typically resolved by the court examining the administrative record to decide cross-motions for summary judgment ... There are no witnesses to consider, and documentary evidence is as easily provided in one venue as another, especially in this age of electronic transmission."); *Export-Import Bank*, 2013 WL 5273088, at \*4 (similar).

### 3. Litigation costs do not favor transfer

Transfer to the D.D.C. would simply shift the burdens and costs of travel from the parties' attorneys to Sierra Club members and staff, who wish to attend proceedings in this case. *See* Monahan Decl. ¶¶ 10-12; Williams Decl.; *McCarthy (2015)*, 2015 WL 1535594 at \*4 (forcing non-profit plaintiffs to bear increased travel costs weighs against transfer).

### 4. Court congestion does not favor transfer to the D.D.C.

The difference in median time to resolve the cases in each of the districts (less than three months) is irrelevant in light of the fact that this Court has set an expeditious briefing schedule. *See* *McCarthy (2015)*, 2015 WL 1535594 at \*5 (treating relative congestion as irrelevant in light of court's commitment to expeditious resolution).

**CONCLUSION**

Plaintiffs have waited years and years for EPA to complete the mandatory reviews of standards for coke ovens. Transfer will create further delay, and EPA has identified no reasons that would justify making Plaintiffs wait even longer.

Respectfully submitted this 13th day of November, 2019,

/s/ Tosh Sagar
TOSH SAGAR, Admitted *Pro Hac Vice*
JAMES S. PEW, Admitted *Pro Hac Vice*
Earthjustice
1625 Massachusetts Ave., NW, Ste. 702
Washington, DC 20036
tsagar@earthjustice.org,
jpew@earthjustice.org
Tel: 202-667-4500
Fax: 202-667-2356

PAUL R. CORT, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
pcort@earthjustice.org
Tel: 415-217-2000
Fax: 415-217-2040

*Attorneys for Plaintiffs*