### EPA's Information Gathering Authority
### Under Section 114 of the Clean Air Act

Under Section 114 of the Act (42 U.S.C. 7414), Congress has given the U.S. Environmental Protection Agency broad authority to secure information needed "for the purpose of (i) developing or assisting in the development of any implementation plan under Section 110 or 111(d), any standard of performance under Section 111, or any emission standard under Section 112, (ii) determining whether any person is in violation of any such standard of any requirement of such a plan, or (iii) carrying out any provision of this Act."  Amount other things, Section 114 authorizes EPA to make inspections, conduct tests, examine records, and require owners or operators of emission sources to submit information reasonably required for the purpose of developing such standards.  In addition, the EPA Office of General Counsel has interpreted Section 114 to include authority to photograph or require submission of photographs of pertinent equipment, emissions, or both.

Under Section 114, EPA is empowered to obtain information described by that section even if you consider it to be confidential.  You may, however, request that EPA treat such information as confidential.  Information obtained under Section 114 and covered by such a request will ordinarily be released to the public only if EPA determines that the information is not entitled to confidential treatment.[1]  Procedures to be used for making confidentiality determinations, substantive criteria to be used in such determinations, and special rules governing information obtained under Section 114 are set forth in 40 CFR Part 2 published in the Federal Register on September 1, 1976 (40 FR 36902).

Pursuant to § 2.204(a) of EPA's Freedom of Information Act (FOIA) regulation, in the event a request is received, or it is determined that a request is likely to be received, or EPA desires to determine whether business information in its possession is entitled to confidential treatment even though no request for release of the information has been received, please be advised that EPA will seek, at that time, the following information to support your claim as required by § 2.204(e)(4) of EPA's FOIA regulations:

1. Measures taken by your company to guard against undesired disclosure of the information to others;

2. The extent to which the information has been disclosed to others, and the precautions taken in connection therewith;

3. Pertinent confidentiality determinations, if any, by EPA or other Federal agencies, and a copy of any such determinations, or reference to it, if available; and

4. Whether your company asserts that disclosure of the information would be likely to result in substantial harmful effects on the business' competitive position, and if so, what those harmful effects would be, why they should be viewed as substantial, and an explanation of the causal relationship between disclosure and such harmful effects.

---

[1] Section 114 requires public availability of all emission data and authorizes disclosure of confidential information in certain circumstances.  See 40 FR 36902 - 36912 (September 1, 1976).

7042   Federal Register / Vol 56. No. 35 / Thursday, February 21, 1991 / Notices

[AD-FRL-3906-3]

Disclosure of Emission Data Claimed as Confidential Under Sections 110 and 114(c) of the Clean Air Act

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Notice of policy on public release of certain emission data submitted under sections 110 and 114(c) of the Clean Air Act (CAA).

**SUMMARY:** Section 114(c) of the CAA excludes emission data from the general definition of trade secret information. Certain classes of data submitted to the EPA under sections 110 and 114(a) of the CAA are emission data, and, as such, cannot be withheld from disclosure as confidential pursuant to section 1905 of title 18 of the United States Code. This notice clarifies EPA's current policy, and solicits comment regarding that policy and categories of data which it considers excluded from a trade secret definition.
**DATES:** Written comments pertaining to this notice are requested by April 22, 1991.
**ADDRESSES:** Submit comments to: Nancy D. Riley, U.S. Environmental Protection Agency, Emission Standards Division, Pollutant Assessment Branch (MD-13), Research Triangle Park, NC 27711.
**FOR FURTHER INFORMATION CONTACT:** Timothy Mohin (telephone: (919) 541-5349 commercial/FTS 629-5349) or Karen Blanchard (telephone: (919) 541-5503 commercial/FTS 629-5503), Pollutant Assessment Branch (MD-13), Emission Standards Division; or Thomas Rosendahl (telephone: (919) 541-5404 commercial/FTS 629-5404), National Air Data Branch (MD-14), Technical Support Division; U.S. Environmental Protection Agency, Research Triangle Park, North Carolina 27711.
**SUPPLEMENTARY INFORMATION:** The EPA routinely uses the authority of sections 110 and 114(a) of the CAA to gather technical information from industries involved in operations that lead to emission of pollutants to the ambient air. This information has been used, among other things, to better characterize emitting facilities and to evaluate the need for and impacts of potential regulation.

Information requests under sections 110 and 114(a) of the CAA typically include questions on uncontrolled and controlled emission rates and emission parameters of the pollutant or group of pollutants of concern. The respondents sometimes claim that its response constitutes trade secret information, and thus, should be treated as confidential. Claims of confidentiality may be made under section 114(c) of the CAA, which states "* * * upon a showing satisfactory to the Administrator by any person that records, reports, or information, or a particular part thereof, (other than emission data) to which the Administrator has access under this section if made public, would divulge methods or processes entitled to protection as trade secrets of such person, the Administrator shall consider such * * * confidential in accordance with the purposes of section 1905 of title 18 of the United States Code * * *." If the Administrator so determines, the information is not disclosable to the public.

However, section 114(c) of the CAA provides that information claimed to be a trade secret but which constitutes emission data may not be withheld as confidential. Although typically the EPA evaluates whether information constitutes emission data on a case-by-case basis, it believes that some kinds of data will always constitute emission data within the meaning of section 114(c). The purpose of this notice is to describe, without attempting to be comprehensive, that information which the EPA generally considers to be emission data, and which cannot qualify as confidential under either section 114(c) or section 110 (as set forth in 41 CFR 51.321, 51.322, and 51.323) of the CAA. The EPA is issuing this notice to clarify its policy and procedures, to facilitate the use of these data in automated data systems and computer-based simulation models, and to expedite processing of claims for confidentiality or requests for disclosure.

The EPA presently determines that data submitted to it as emission data does not qualify as confidential if it meets the following definition under 40 CFR 2.301(a)(2)(i):

a. Definitions. For the purpose of this section, (1) *Act* means the Clean Air Act, as amended, 42 U.S.C. 7401 et seq. (2)(i) *Emission data* means, with reference to any source of emission of any substance into the air—

(A) Information necessary to determine the identity, amount, frequency, concentration, or other characteristics (to the extend related to air quality) of any emission which has been emitted by the source (or of any pollutant resulting from any emission by the source), or any combination of the foregoing;

(B) Information necessary to determine the identity, amount, frequency, concentration, or other characteristics (to the extent related to air quality) of the emission which, under an applicable standard or limitation, the source was authorized to emit (including, to the extent necessary for such purposes, a description of the manner or rate of operation of the source), or any combination of the foregoing.

(C) A general description of the location and/or nature of the source to the extent necessary to identify the source and to distinguish it from other sources (including, to the extent necessary for such purposes, a description of the device, installation, or operation constituting the source).

The table below lists the specific data fields which the EPA presently considers to constitute emission data and provides a brief description of what each data field describes. The descriptions are intended to provide general information. This list is not exhaustive, and, therefore, other data might be found, in a proper case, to constitute emission data.

Emission Data Fields

Facility Identification: The following data fields are needed to establish the identity and location of emission sources. This shall also include a description or an identifier of the device, installation, or operation constituting the source. These data are used to locate sources for dispersion evaluation and exposure modeling.
Plant Name and related point identifiers
Address
City
County
AQCR (Air Quality Control Region)
MSA, PMSA, CMSA (Metropolitan Statistical Areas)
State
Zip Code
Ownership and point of contact information
Locational Identifiers:

Latitude & Longitude, or UTM Grid
Coordinates
SIC (Standard Industrial Classification)
Emission point, device or operation
description information
SCC (Source Classification Codes)
    Emission Parameters: The following data
fields are needed to establish the
characteristics of the emissions. This
information is needed for the analyses of
dispersion and potential control equipment.
Emission type
    (e.g., nature of emissions such as $CO_2$),
    particulate or a specific toxic
    compound, and origin of emissions
    such as process vents, storage tanks or
    equipment leaks)
Emission rate
    (e.g., the amount released to the
    atmosphere over time such as kg/yr or
    lbs/yr)
Release height
    (e.g., height above ground level where the
    pollutant is emitted to the atmosphere)
Description of terrain and surrounding
structures
    (e.g., the size of the area associated with
    adjacent structures in square meters and
    terrain descriptions such as
    mountainous, urban, or rural)
Stack or vent diameter at point of emissions
    (e.g., the inside diameter of vent at the
    point of emission to the atmosphere in
    meters)
Release velocity
    (e.g., velocity of release in m/sec)
Release temperature
    (e.g., temperature of release at point of
    release in degrees Kelvin)
Frequency of release
    (e.g., how often a release occurs in events
    per year)
Duration of release
    (e.g., the time associated with a release to
    the atmosphere)
Concentration
    (e.g., the amount of an emission stream
    constituent relative to other stream
    constituents expressed as parts per
    million (ppm), volume percent, or
    weight percent)
Density of the emissions stream or average
molecular weight
    (e.g., density expressed as fraction or
    multiple of the density of air: molecular
    weight in g/g-mole)
Boiler or process design capacity
    (e.g., the gross heating value of fuel input
    to a boiler at its maximum design rate)
Emission estimation method
    (e.g., the method by which an emission
    estimate has been calculated such as
    material balance, source test, use of AP-
    42 emission factors, etc.)
Percent space heat

(e.g., the percent of fuel used for space
heating)
Hourly maximum design rate
    (e.g., the greatest operating rate that would
    be expected for a source in a 1-hour
    period)

    The EPA has determined that these data
are emission data and releasable upon
request. This determination applies to data
currently held by EPA as well as to
information submitted to EPA in the future.
Future requests for information under
sections 110 and 114 of the CAA will
indicate that these emission data will not be
held confidential. This determination applies
only to the data listed in the table.
Determinations will continue to be made on
a case-by-case basis for data not specified in
this generic determination.
    After consideration of comments on this
policy, a revised policy/determination may
be published.
    Dated: February 8, 1991.
Michael Shapiro.
Acting Assistant Administrator for Air and
Radiation.
[FR Doc. 91-4114 Filed 2-20-91: 8:45 am]

Enclosure 5

November 2021

# Summary of Procedures for Safeguarding Clean Air Act Confidential Business Information

**1. Purpose**

This memorandum describes U.S. Environmental Protection Agency (EPA), Office of Air Quality Planning and Standards (OAQPS) policy and procedures set forth for the handling of information claimed as Confidential Business Information (CBI), whether submitted voluntarily or obtained under Section 114 of the Clean Air Act (CAA), and governed by EPA regulations in 40 Code of Federal Regulations (CFR), Part 2, Subpart B, and other EPA regulations and policies.

**2. Reference Documents:**

    a.  Clean Air Act, as amended.
    b.  40 CFR, Chapter 1, Part 2, Subpart B - Confidentiality of Business Information.
    c.  EPA Information Security Manual.
    d.  OAQPS Confidential Business Information Security Manual (January 2009).
    e. MEMORANDUM. Exception to Policy to Allow Virtual Access to Clean Air Act (CAA) Confidential Business Information (CBI) (September 28, 2021)

**3. Exception:**

This document was prepared as a summary of data gathering and handling procedures used by the OAQPS of the EPA.  Nothing in this document shall be construed as superseding or being in conflict with any applicable regulations, statutes, or policies to which EPA is subject.

**4. Definition:**

Confidential Business Information (CBI) - Information claimed by the provider to be confidential.  This information may be identified with such titles as trade secret, secret, administrative secret, company secret, secret proprietary, privileged, administrative confidential, company confidential, confidential proprietary, or proprietary.  NOTE:  These markings should not be confused with the classification markings of national security information identified in Executive Order 11652.

**5. Background**

Section 114 (c) of the CAA, as amended, reads as follows:

"Any records, reports, or information obtained under subsection (a) shall be available to the public, except that upon a showing satisfactory to the Administrator by any person that records, reports, or information, or particular part thereof (other than emission data), to which the Administrator has access under this section if made public, would divulge methods or processes entitled to protection as trade secrets of such person, the Administrator shall consider such record, report, or information or particular portion thereof confidential in accordance with the purposes of Section 1905 of Title 18 of the United States Code (U.S.C.), except that such record, report, or information may be disclosed to other officers, employees, or authorized representatives of the United States concerned with carrying out this Act or when relevant in any proceeding under this Act."

The treatment of CBI by EPA, including data obtained under Section 114 of the CAA, is governed by 40 CFR Part 2. These regulations require EPA offices to include a notice with each request for information to inform the business of: (1) its right to assert a claim of confidentiality covering part or all of the information, (2) the method for asserting a claim, and (3) the effect of failure to assert a claim at time of submission. In addition, the regulations: (1) set forth procedures for the safeguarding of confidential information, (2) contain provisions for providing confidential information to authorized representatives, (3) contain provisions for the release of information to the Congress, Comptroller General, other Federal agencies, State and local governments, and Courts, (4) permit the disclosure of information within EPA to employees with an official need for the information, and (5) prohibit wrongful use of such information and cite penalties for wrongful disclosure. Further, the regulations contain the Agency's basic rule concerning the treatment of requests for information under the Freedom of Information Act (FOIA) (5 U.S.C. 552).

**6. Procedures:**

a. Request for Information.

Each request for information made under the provisions of Section 114(a) includes the standard enclosure "EPA's Information Gathering Authority under Section 114 of the Clean Air Act" which was designed to meet the requirement of 40 CFR Part 2 discussed above.

b. Receipt of CAA CBI.

CBI may be received in the following manner:[1]

- <u>Our preferred method to receive CBI is for it to be transmitted to OAQPS electronically</u> using email attachments, File Transfer Protocol (FTP), or other online file sharing services (e.g., Dropbox, OneDrive, Google Drive). Electronic submissions must be transmitted directly to the OAQPS CBI Office using the email address, oaqpscbi@epa.gov, and should include clear CBI markings. If assistance is needed with submitting large electronic files that exceed the file size limit for email attachments, and if you do not have your own file sharing service, please email oaqpscbi@epa.gov to request a file transfer link.

- Sent to the OAQPS Document Control Officer through a postal service (U.S. Mail, UPS, Federal Express). The actual CBI material should be double wrapped and clearly marked. Any CBI markings should not show through the outer envelope.
- Hand carried by EPA employee from a site visit or meeting

Upon receipt of information for which confidential treatment has been requested, the OAQPS Document Control Officer (DCO) logs the material into the OAQPS CAA CBI tracking system, and a permanent file is established.  The part of the material is claimed to be confidential should be marked "Subject to Confidentiality Claim." Electronic submittals are stored on a restricted SharePoint site. The OAQPS CAA CBI tracking system provides a brief description of the material (submitter, subject, number of pages, etc.), identifies it with the correct project number or work assignment number, and lists those persons who are authorized to have access to the information.  A record of personnel accessing the information (is also kept on file.  By regulation, confidential information must be so marked or designated by the originator.  The EPA takes additional measures to ensure that the proprietary designation is uniformly indicated and immediately observable.  All unmarked or undesignated information (except as noted below) may be authorized for public release.

In compliance with Sections 2.204 and 2.208 of 40 CFR Part 2, the Group Leader responsible for the requested information may review the information to determine the validity of the confidentiality claim as prescribed by the sections.  If the information is clearly not confidential, the Group Leader prepares a letter for the signature of the responsible Division Director to notify the business of this finding. This information will still be treated as CBI until the submitter has an opportunity to respond to this determination.

    c.  Storage of CAA CBI.

---

[1] Though submitters of CBI are requested to submit this information directly to the OAQPS DCO, there have been situations where the information was sent to other EPA staff. If this occurs, the EPA staff person receiving the CBI will hand carry the CBI to the OAQPS CBI Office as soon as practicable. If received electronically the CBI should be handled in accordance with the procedures in Section 3.b of the OAQPS Confidential Business Information Security Manual.

Folders, documents, or material containing CAA CBI (as defined) shall be secured according to the instructions listed in the OAQPS Security Manual.  In addition, the CBI storage area that has been identified specifically for that purpose is equipped with a supplementary locking device.  The storage area and files are under the direct control of the OAQPS DCO.

Access to the storage area is limited to the DCO, Document Control Assistant, and the minimum number of persons required to effectively maintain normal business operations as directed by the Director, Central Operations and Resources (CORE).

Files may be issued upon confirmation that the requesting individual is authorized to receive the information.  All confidential files must be returned no later than close of business on the same day.  The intended user must sign the CBI Control Record when checking out files.

Individuals signing out confidential files are responsible for their safekeeping.  Files must never be left unattended.  The information must not be disclosed to any non-authorized personnel.

CBI in an electronic format will be stored, retrieved, and catalogued on a restricted SharePoint site. Access to the restricted site will be limited to personnel with active OAQPS CBI authorization. Requirements for OAQPS CBI authorization and access to specific CBI will continue to follow the guidance that is outlined in the OAQPS CBI Security Manual.  Sharing electronic CBI information with unauthorized personnel continues to be prohibited. Electronic CBI Information may not be copied, printed, scanned, or stored in any location outside of the designated restricted CBI SharePoint site.

Storage procedures for CAA CBI by an authorized representative of EPA (see Section d. below) must be, at a minimum, as secure as those established for EPA offices within OAQPS. Whenever CBI is removed from the EPA files to be transmitted to an authorized representative, a notation is made in the file's control record and transfer log indicating what information was transmitted, the date, and the recipient.  The authorized representative returns a signed receipt to the DCO.

d.  Access to CAA CBI.

Only authorized EPA employees may open or distribute CAA CBI.

Only employees who require, have a need to know, and are authorized access to CAA CBI in the performance of their official duties are permitted to review documents and, upon receiving a confidential document, must sign and date a form to certify their access to the document.

The Group Leader having primary responsibility for the CAA CBI provides a memorandum to the DCO designating those personnel authorized to access specific CBI. This memorandum may be submitted electronically. No person is automatically entitled to access

based solely on grade, position, or security clearance.  The names of persons granted access to CAA CBI are placed on the CAA CBI access list.  The CAA CBI access list indicates the "specific" CBI each person is permitted to see.  The access list is reviewed and updated periodically.

Companies under contract to perform work for the EPA may be designated authorized representatives of EPA.  As authorized representatives, contractors may be granted access to CAA CBI.  The following conditions apply when it has been determined that disclosure is necessary:

(1)  The contractor designated as a representative and its employees (a) may use such confidential information only for the purpose of carrying out the work required, (b) must refrain from disclosing the information to anyone other than EPA without having received from EPA prior written approval of each affected business or of an EPA legal office, and (c) must return to EPA all copies of the information (and any abstracts or excerpts there from) upon request or whenever the information is no longer required for the performance of the work.

(2)  The authorized contractor designated as a representative must obtain a written confidentiality agreement from each of its employees who will have access to the information.  A copy of each employee agreement must be furnished to EPA before access is permitted.

(3)  The contractor designated as an authorized representative must agree that the conditions in the contract concerning the use and disclosure of CAA CBI are included for the benefit of, and shall be enforceable by, both EPA and any affected business having a proprietary interest in the information.

Information may be released to or accessed by EPA employees other than OAQPS employees only upon approval of the Director, CORE

Requests for CAA CBI from other Federal agencies, Congress, the Comptroller General, Courts, etc., are processed in accordance with 40 CFR Part 2, Subpart B.

Requests under the FOIA are handled in accordance with 40 CFR Part 2, Subpart A.  The FOIA Coordinator must be consulted prior to responding to any request for information if a claim of confidentiality has been asserted or if there is reason to believe that a claim might be made if the business knew release was intended.

e.  Use and Disclosure of CAA CBI.

The CAA CBI, as defined, may not be used in publications, supporting documentation, memoranda, etc., that become a part of the public domain, except as provided for in 40 CFR Part 2, Subpart B.  The CAA CBI may not be summarized without the approval of the Group Leader responsible for the CAA CBI.  Any authorized reproductions must be logged into the CAA CBI document tracking system and treated according to the same procedures applicable to the

original confidential material. Documents, materials, or extracts of information generated by EPA which contain CAA CBI must be stamped "Subject to Confidentiality Claim" and a cover sheet must be attached to identify the material as CBI.

    f. Handling of Information Gathered during Site Visits

    Because industrial-data-gathering visits, plant inspections, and source testing (collectively site visits) can involve receipt of CAA CBI, it is the policy of OAQPS to protect all parties involved in the following manner:

    (1)    At the beginning of the site visit, EPA or its authorized representative will discuss with the industry representatives the information sought and how it is to be used. Our preference is that the facility not discuss or reveal any information they consider to be CBI unless necessary to meet the data gathering objectives of the site visit.

    (2) If it becomes necessary to discuss any CBI, we will request the industry representatives clearly identify the CBI information at the time it is discussed. If possible, information for which a confidentiality claim is made should be segregated from the non-CBI information and mailed directly to the OAQPS Document Control Officer Assistant: Ms. Katrina Chambers, U.S. Environmental Protection Agency, Office of Air Quality Planning and Standards, (MD-C404-02), 109 T.W. Alexander Drive, Research Triangle Park, North Carolina 27711, or submitted electronically to oaqpscbi@epa.gov. If mailing or electronic transmission is not possible, any data designated as CBI by the facility will be hand carried back to the OAQPS office.

    (3) Following a site visit a trip report is usually prepared to include, as practicable, pertinent information received during the visit. The report may be prepared by either EPA or its authorized representative. This draft report will not contain any information the industry representatives have designated as CBI. We will request that the responsible industry official (RIO) at the site review the report for accuracy and return the report with any comments to the EPA representative. This report will then be authorized for release and/or entry into the rulemaking docket.

    (4) Any material identified as CAA CBI will be kept in the CBI files as described above. If it becomes necessary to use any of this CBI information or to obtain industry review for technical accuracy, we will separately submit it to the site for review. The material will be clearly identified as Subject to Confidentiality Claim with an attached yellow cover sheet. A custody receipt for the information will also be enclosed. We will request that the RIO sign and date the form to acknowledge receipt of the trip report and return a copy of the form by mail or fax to Ms. Katrina Chambers, the Document Control Officer Assistant. The RIO at the site is requested by cover letter to review the material for accuracy, confirm the specific information that is being claimed as CBI, and return an edited copy to the responsible EPA representative within the time specified. The original draft of this material is kept in the CBI file until the edited copy is returned by the RIO. Any CBI in the edited copy will also be kept in the CBI file.



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**OFFICE OF AIR QUALITY PLANNING AND STANDARDS**
**RESEARCH TRIANGLE PARK**
**109 T.W. ALEXANDER DRIVE**
**DURHAM, NORTH CAROLINA 27711**

OAQPS-SPPD                                                          September 23, 2020

**TO:**        David Bullock, BPA Program Manager
                Research Triangle Institute (RTI)

**FROM:**    Penny E. Lassiter, Director
                Sector Polices and Programs Division

**SUBJECT:**  Designation of Authorized Representative for Standards of Performance for New
                Stationary Sources (Section 111), National Emission Standards for Hazardous Air
                Pollutants (Section 112), Solid Waste Combustion (Section 129), and Federal Ozone
                Measures (Section 183)


As the Prime Contractor under EPA Blanket Purchase Agreement 68HERD20A0004, Research
Triangle Institute (RTI) is hereby designated Authorized Representatives of the Administrator of the
United States Environmental Protection Agency for the purpose of assisting in the development of
standards of performance for new stationary sources under 42 U.S.C. 7411, national emission
standards for hazardous air pollutants under 42 U.S.C. 7412, solid waste combustion under 42
U.S.C. 7429, and Federal ozone measures under 42 U.S.C. 7511 (b). This designation applies to all
task orders issued under EPA Blanket Purchase Agreement 68HERD20A0004 and is in effect for the
full duration of the BPA, to include any task orders with option periods that should extend beyond
the expiration of the final BPA ordering period. This designation also extends to the following
authorized subcontractors and consultants under the referenced BPA:

> Advanced Resources International, Inc. (ARI);
> Andover Technology Partners;
> Caldwell Environmental, Inc.;
> Calloway and Associates, Inc.;
> Eastern Research Group, Inc. (ERG);
> SC&A, Inc.;
> David W. Reeves.

This designation is made pursuant to the Clean Air Act, 42 U.S.C. 7414.  The United States Code
provides that, upon presentation of this credential, the Authorized Representatives named herein:  (1)
shall have a right of entry to, upon, or through any premises in which an emission source is located
or in which records required to be maintained under 42 U.S.C. 7414 (a) (1) are located and (2) may
at reasonable times have access to and copy any records, inspect any monitoring equipment or
method required under 42 U.S.C. 7414 (a) (1), and sample any emissions that the owner or operator
of such source is required to sample.

FOR OFFICIAL USE ONLY (FOUO)

OAQPS-SPPD
SUBJECT: Designation of Authorized Representative for Standards of Performance for New Stationary Sources (Section 111), National Emission Standards for Hazardous Air Pollutants (Section 112), Solid Waste Combustion (Section 129), and Federal Ozone Measures (Section 183)

Authorized Representatives of the Administrator are subject to the provisions of 42 U.S.C. 7414 (c) respecting confidentiality of methods or processes entitled to protection as trade secrets, as implemented by 40 CFR 2.301 (h) (41 FR 36912, September 1, 1976).

PENNY LASSITER

Digitally signed by PENNY LASSITER
Date: 2020.09.24 12:22:31 -04'00'

Penny E. Lassiter
Division Director
Sector Polices and Programs Division

**Site-Specific Test Plan Development Guidance**

This information collection request (ICR) provides specific additional instructions for each prescribed test method to ensure that the collected data will meet the objectives of the ICR.  To ensure that all data submitted in fulfillment of this ICR are of sufficient and known quality, EPA believes it is highly advisable for each facility (subject to emissions testing under the ICR) to prepare a site-specific test plan prior to testing.  A site-specific test plan addresses the planning and quality assurance and quality control procedures and acceptance criteria for all of the testing, including the collection of process and fuel data.

You may find guidance for developing such a site-specific test plan at http://www.epa.gov/ttn/emc/guidlnd/gd-042.pdf.  Such a test plan would provide a means for you to verify that the quality assurance protocols, contained in the various test methods, are met. You need not submit the test plan to EPA; however, much of the information in a complete site-specific test plan consists of data that are used for required fields in Version 3 of the EPA Electronic Reporting Tool (ERT) (see Enclosure 8).

**Test Plan**

**Example**

**Facility Information:**

| Enter the name of the facility |
| Enter physical Address |
| |
| Enter physical city | WY |

**Contact:** Person to contact for more detail

**Phone:**

**Fax:**

**Email:** Ofaboveperson@email.com

**Testing Company:**

| Name of primary testing organization |
| US postal address of above |
| |
| US postal address of abov | | | |

**Contact:** Field test leader

**Phone:**

**Fax:**

**Email:** Ofaboveperson@email.com

**State ID:**

**Project Number:**

**Industry NAICS:** | **AFS #:** | **FRS #:**

**Air Permit Number:**

This is the State or Fed Permit Number

**Permitted Source ID/Name:**

| | As listed in Title V or State Permit |

**Permitted Maximum Process Rate:**

From previous years operations

**Max. Normal Operation Process Rate:**

**Target Process Test Rate**

**SCC / Description:** 30301605 | Industrial Processes - Primary Metal Production - Magnesium - Chlorine Bypass Scrubber

**1. Please enter sampling location information.**

| Location | Round Duct Diam. | Rect. Duct Length /Width | Equiv. Diam | DownStream Distance from Disturbance (Distance B): | UpStream Distance from Disturbance: | Number of Traverse Ports | Min.Travers Points |
|---|---|---|---|---|---|---|---|
| Chlorine bypass scrubber stack | 50 | | | 48 | 20 | 2 | 24 |

**2a. Please provide the following information for each test parameter.**

| Location | Target Parameter | Test Method | Number of Test Runs | Test Run Duration | Comments |
|---|---|---|---|---|---|
| Chlorine bypass scrubber stack | Hexachlorobenzene | Method 0010 | 7 | 120 | |
| Chlorine bypass scrubber stack | Chlorine | Method 26A | 7 | 120 | |
| Chlorine bypass scrubber stack | Hydrogen Chloride | Method 26A | 7 | 120 | |

**Test Plan**

**Example**

| Chlorine bypass scrubber stack | Oxygen | Method 3A O2 | 7 | 120 | |
|---|---|---|---|---|---|
| Chlorine bypass scrubber stack | Carbon Dioxide | Method 3A CO2 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,4'-DiCB (PCB 8) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',5-TrCB (PCB18) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,4,4'-TrCB (PCB28) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,5'-TeCB (PCB44) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',5,5'-TeCB (PCB52) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,3',4,4'-TeCB (PCB66) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 3,3',4,4'-TCB (PCB77) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 3,4,4',5-TCB (PCB81) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',4,5,5'-PeCB (PCB101) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,3,3',4,4'-PeCB (PCB105) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,3,4,4',5-PeCB (PCB114) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,3',4,4',5-PeCB (PCB118) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2',3,4,4',5-PeCB (PCB123) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 3,3',4,4',5-PeCB (PCB126) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,3',4,4'-HxCB (PCB128) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,4,4',5'-HxCB (PCB138) | OTM - 46 | 7 | 120 | |

**Test Plan**

**Example**

| | | | | | |
|---|---|---|---|---|---|
| Chlorine bypass scrubber stack | 2,2',4,4',5,5'-HxCB (PCB153) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,3,3',4,4',5-HxCB (PCB156) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,3,3',4,4',5'-HxCB (PCB157) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,3',4,4',5,5'-HxCB (PCB167) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 3,3',4,4',5,5'-HxCB (PCB169) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,3',4,4',5-HpCB (PCB170) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,4,4',5,5'-HpCB (PCB180) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,4,4',5,5',6-HpCB (PCB187) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,3,3',4,4',5,5'-HpCB (PCB189) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,3',4,4',5,6-OcCB (PCB195) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,3',4,4',5,5',6-NoCB (PCB206) | OTM - 46 | 7 | 120 | |
| Chlorine bypass scrubber stack | 2,2',3,3',4,4',5,5',6,6'-DeCB (PCB209) | OTM - 46 | 7 | 120 | |

**2b.  Please select the Emissions / Concentrations for each location.**

| Location | Test Method | Emissions / Concentrations | Corrected Analyte | Corrected Percent |
|---|---|---|---|---|
| Chlorine bypass scrubber stack | Method 0010 | ug/dscm | | 0 |
| Chlorine bypass scrubber stack | Method 0010 | lb/hr | | 0 |
| Chlorine bypass scrubber stack | Method 26A | lb/hr | | 0 |
| Chlorine bypass scrubber stack | Method 26A | mg/dscm | | 0 |
| Chlorine bypass scrubber stack | OTM - 46 | ng/dscm | | 0 |
| Chlorine bypass scrubber stack | OTM - 46 | lb/hr | | 0 |

**3.  What is the specific purpose for the proposed testing?**

**Test Plan**

**Example**

☐ Part 60 (NSPS)    ☐ NSR/PSD

☐ Part 61 (NESHAP)    ☐ SIP

☐ Part 63 (MACT)    ☑ Section 114

☐ Part 65 (MACT)    ☐ State Rule

☐ RATA    ☐ Other (describe:)

> The primary reasons for performing this emissions test is to satisfy the EPA's Section 114 Letter requiring this testing.

**4. List all state and federal regulations that apply to the proposed testing:**

**5. Will the test results be used for other regulatory purposes (e.g., emission inventories, permit applications, etc.) beyond that stated above?   If yes, explain.**

> List any secondary purposes that you will use the data from this emissions test to address. If known list those pollutants that are of secondary interest. Some examples are: Determine emissions of CO, THC, VOC and condensable PM emissions for use in emissions inventory reporting and determination of fees.

**6a. Enter the process data to be documented during testing.**

| Process Parameter | Units | Target Value | Comments |
|---|---|---|---|
| Magnesium Produced | Tons/hr | 0 | |
| Scrubber flow rate | Gallons/min | 0 | gal/min |
| Scrubber Pressure Drop | Inches of Water/hr | 0 | |

**6b. Enter the process lab data to be documented during testing.**

**7a. Please give a brief description of the source (including control equipment) and attach source or process flow diagram:**

**7b. Control Devices:**

| Control Device Name |
|---|
| SCRUBBER |

**8. Describe  below or attach complete documentation of all modifications and/or deviations to the applicable test methods.  If alternative methods requested, attach documentation of request**

☐ Yes  ☑ No

> In this section, identify the promulgation date of any specified test method that you use for determining the procedures followed. This field is also used to document any modifications that are necessary to conduct the emissions test if they are outside the requirements of the cited method. If this modification was approved verbally by a regulatory agency, the name and date of approval should be included. Written formal approval should be attached to this file using the "Attach File" button. Test procedures that are different from those published in the Federal Register should be attached using the "Attach File" button.

**9. Does the proposed sampling location meet the minimum EPA Method 1 criteria for acceptable measurement sites?  Please list below or attach the supporting documentation.**

☐ Yes  ☑ No

> In this section, provide documentation about the compliance of the sampling location to Method 1 criteria AND if the site meets these requirements, change the check box to "Yes". If the sampling location does not meet Method 1 requirements indicate the method used to make the sampling location representative of the emissions from the source.

**Test Plan**

**Example**

**10.  The absence of cyclonic flow been verified prior to testing {40CFR60.8(h) or 40CFR 63.7(d)(ii)}.  An assessment of stratification of esmission gases must also be performed [40CFR60.8(h)].  Will you use EPA Method 1 (Section 2.4) or EPA Method 7E for these assessments?  If not, please explain how you will make the assessments and attach documentation supporting your assessment.  If yes, please attach  supporting documentation.**   ☐ **Yes**  ☑ **No**

This field is for the documentation of the absence of cyclonic flow that is available at the time of the Test Plan generation. If this documentation is not available at this time, documentation is required during the performance of the emissions test. If cyclonic flow exists at the testing location describe the procedures used to obtain representative samples. If there is an absence of cyclonic flow, check the "Yes" box.

**11.  Select the method that will determine the oxygen concentration :**   M3A-instrumental

**12.  Do any of the proposed test methods require analysis of EPA audit samples?  If yes, you must contact an AASP to arrange for the purchase and delivery of an audit sample.**   ☐ **Yes**  ☑ **No**

**13.  Has all testing equipment been calibrated within the past year?  If no, please explain.**   ☐ **Yes**  ☑ **No**

It is expected that the response to this question will be "Yes". This highlights the need to attach the documentation of the calibrations for all equipment used during the conduct of the emissions test. If all the equipment has been calibrated, check the "Yes" box.

**14.  Will all calibration gases be certified by EPA Traceability Protocol procedures?  If No, describe certification procedure below.**   ☐ Yes  ☐ No  ☐ N/A

**15.  Is a dilution system (via EPA Method 205) proposed?**   ☐ Yes  ☐ No  ☐ N/A

**16.  If applicable, list the expected calibration gas concentrations for all proposed instrumental test methods.  Include as much information as is known at this time.**

**17.  What is the proposed test schedule?**

This field is primarily to advise the regulatory authority and facility the dates that emissions testing will be performed including any set up dates.

**18.  Additional comments:**

**19.  Required Personal Protection Equipment:**

This field is primarily to advise the regulatory authority of the type of personal protective equipment that will be required for them to use to access the sampling location and any other locations that are associated with the performance of the test program. It will also serve to inform the facility of the source testers knowledge of the required protective equipment that they will use during the source test program.

**20.  Inlcuded Attachments:**

**Permitted Facility Representative          Date**
**Name:**

**Testing Company Representative          Date**
**Name:**

**Test Plan**

**Example**

**Title:**                                          **Title:**
**Company:**                                    **Company:**
**Sign Date:**                                   **Sign Date:**

Enclosure  9

## Certification Statement

The individual responsible for directing or supervising the preparation of the questionnaire must read and sign the Certification Statement listed below. The certifying official must be a responsible corporate official or his/her authorized representative.

*I certify under penalty of law that the attached questionnaire was prepared under my direction or supervision and that qualified personnel properly gathered and evaluated the information submitted. The information submitted is, to the best of my knowledge and belief, accurate and complete. In those cases where we did not possess the requested information for questions applicable to our facility, we provided best estimates. We have to the best of our ability indicated what we believe to be company confidential business information as defined under 40 CFR Part 2, Subpart B. We understand that we may be required at a later time to justify our claim in detail with respect to each item claimed confidential. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment as explained in Section 113 of the Clean Air Act (42 USC §7413).*


_____          _____
Signature of Certifying Official                                        Date


_____          _____
Printed Name of Certifying Official                              Telephone Number


_____
Title of Certifying Official